IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FORD, | No. C 11-00498 SI |
|     Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO STRIKE AND DISMISS THE AMENDED COMPLAINT** |
|     v. | |
| UNITED STATES OF AMERICA, et al., | |
|     Defendants. | |

Currently before the Court is defendants' motion to strike and dismiss plaintiff's Amended Complaint. This matter is set for hearing on August 12, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART defendants' motion to strike and dismiss.

**BACKGROUND**

Plaintiff John Ford is a current employee of the United States Department of Veterans Affairs ("VA") in San Francisco. On February 2, 2011, he filed the complaint in this case, claiming that he was discriminated against on account of his race, age, and religion during the first year he worked at the VA. Despite the fact that the VA is a federal entity, Ford's complaint did not invoke the federal anti-discrimination laws. Instead, Ford's complaint included claims under California's Fair Housing and Employment Act ("FEHA"), as well as a number of state-law tort claims brought under the Federal Tort Claims Act ("FTCA"). The Court dismissed his original complaint, but allowed Ford to file an amended complaint alleging claims for discrimination under Title VII and the ADEA . *See* May 24, 2011 Order.

On June 14, 2011, plaintiff filed his Amended Complaint ("AC"). The AC asserts the following claims: (1) race and national origin discrimination and retaliation for opposing the same; (2) age discrimination and harassment based on age discrimination and retaliation for opposing the same; (3) denial of promotion; (4) reprisal and retaliation and claim for hostile work environment for opposition to discrimination; and (5) discrimination based on religious views.

Defendants now move to strike portions of the AC which reference barred FTCA and tort-based claims as well as the "Doe" defendants. Defendants also move to dismiss the AC, arguing both that most of plaintiff's claims were not administratively exhausted and are time-barred, and that plaintiff fails to state claims for retaliation or discrimination.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f). Motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the

court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

**I.     Motion to strike**

Defendants first move to strike plaintiff's allegations regarding the FTCA and tort-based conduct as barred. Specifically, defendants argue that plaintiff's references to the Federal Tort Claims Act ("FTCA," 28 U.S.C. § 1346) should be dismissed because plaintiff was only granted leave to amend to add claims for violation fo Title VII and the ADEA. However, the Court finds that the AC does not attempt to state claims under the FTCA. Rather, the citations in the AC to 28 U.S.C. § 1346 appear to be intended, but incorrect, citations to the ADEA. *See, e.g.*, AC ¶¶ 32-37 ("AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 28 U.S.C. § 1346 ET SEQ.")

Defendants also argue that since claims for assault, battery, false imprisonment, and tortious interference with contract are barred by the FTCA, allegations regarding that same conduct should be stricken from the AC. *See* Reply at 3. However, the Court finds that the AC does not allege actual *claims* for assault, battery, false imprisonment, and tortious interference with contract.[1] To the extent such tortious conduct is mentioned in the AC, *see e.g.*, AC ¶ 38, plaintiff clarifies that the conduct is simply relevant to his claims for reprisal, retaliation and hostile work environment. Oppo. at 1. As such, the Court finds that the complaint does not allege violation of the FTCA and does not allege claims for tortious conduct. Therefore, the Court DENIES that portion of the motion to strike.

Defendants also move to strike the Doe defendants from the AC paragraph 10, which identifies the Does as "employees and/or alter egos of the VA, and Shinseki," arguing that Does defendants are not proper parties under Title VII claims. *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 922 n.2

---

[1] As the Court noted in its May 2011 Order, any such claims are barred by the FTCA. The government's position that such conduct is not relevant to plaintiff's hostile work environment or discrimination claims is without support. The cases relied on by the government are inapposite. *See, e.g., United States v. Shearer*, 473 U.S. 52, 55 (1985) (holding that the FTCA bars claims "arising" out of intentional torts, including negligence claims that attempt to avoid the bar); *White v. General Services Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981) (holding Title VII provides exclusive remedy against federal government for employment discrimination and retaliation claims from filing EEO complaints).

3

(9th Cir. 2000) (noting that Title VII does not allow discrimination or harassment claims against fellow employees). The Court agrees that the use of Doe defendants at this juncture, in a discrimination case under Title VII and the ADEA, is not proper. The Court GRANTS defendants' motion to strike paragraph 10 from the AC.

## II.     Motion to dismiss

### A.     Failure to exhaust

Defendants argue that all of plaintiff's claims for employment discrimination based upon race, color, religion, age, hostile work environment and retaliation are barred by plaintiff's failure to exhaust his administrative remedies by reporting those claims to an EEO officer within 45 days of their occurrence. Under 29 C.F.R. section 1614.105(a)(1), a federal employee must initiate contact with an EEO counselor within 45 days of the date of the alleged discrimination or adverse action. *Id.* (requiring filing or informal complaint to initiate counseling). The Ninth Circuit has held that "although the regulatory pre-filing exhaustion requirement at § 1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, we have consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court." *Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002)). Employees are also charged with subsequently filing a formal administrative complaint pursuant to 29 C.F.R. section 1614.106. The Ninth Circuit has also held that acceptance and investigation of a complaint by an agency does not waive an objection to exhaustion or timeliness raised in district court, where the administrative investigation does not result in a finding of discrimination. *See Boyd v. United States Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985).

Here, plaintiff made an informal EEO complaint on June 30, 2008. Sladden Decl.,¶¶ 2-3 & Exs. A-B. In that informal complaint, plaintiff alleged that he was discriminated against on the basis of his race and age when he received a notice of termination on May 23, 2008 during his probation period. *Id.*, Ex. A at 3. During the informal EEO process, the EEO counselor was informed that the

notice of termination was rescinded and that plaintiff was "going into permanent status." *Id.* at 5-6.[2] According to the EEO complaint, the counselor confirmed that plaintiff's only claim covered by the informal complaint was Ford's claim that he was served a notice of termination based on his race and age. *Id.*, at 6. Mr. Ford was also cautioned that if additional claims were raised in his formal EEO complaint, those claim may not be accepted for formal complaint processing. *Id.* The informal counseling process was completed on August 21, 2008.

Plaintiff then filed a formal complaint on August 23, 2008. Sladden Decl., Ex. C. In his formal complaint, plaintiff alleged that he was discriminated against based on his race, color, age, religion and suffered from harassment, disparate treatment and a hostile work environment. *Id.* He described the following events in his formal complaint: he complained of disparate treatment as he was told there would be no training or assistance provided by his unit because he was a "[Human Resources] boy." *Id.*, pg, 2. He was told by a supervisor in January 2008 that he was not appreciated in his section, and was assigned presumably-unwanted tasks by that supervisor in June 2008. He was subjected to age discrimination when in April and May 2008 he was denied training that was offered to two younger employees. He also complained that in April 2008 he was denied the right to work overtime and on April 11, 2008 he was told by a co-worker that he was "not a preacher," was referred to in a derogatory way and was physically prevented from leaving the area by that co-worker. *Id.*

On January 12, 2009, Ford's complaint was accepted for investigation by the VA's Office of Resolution Management ("ORM"). Sladden Decl., Ex. B pg 2. The ORM accepted the following allegations for investigation: (1) whether Ford was subjected to discrimination on the basis of race, color, religion or age when in April 2008 he was not chosen for specific training but other, younger, employees were; (2) whether Ford was subjected to disparate treatment on the basis of race, color, religion or age when he was assigned specific duties on May 23 and June 6, 2008; (3) whether plaintiff was subjected to discrimination on the basis of race, color, religion or age when he was given the May 23, 2008 notice of termination during his probation period; (4) whether Ford was subjected to discrimination on the basis of race, color, religion or age when he was subjected to a hostile work

---

[2] Plaintiff admits that he is still currently employed with the VA. *See* AC ¶ 13.

5

environment based on various events that occurred from July 2007 through June 2008. *Id*. at 204.

### i. Discrimination causes of action

In his First, Second and Fifth Causes of Action plaintiff complains about discrimination based on race/national origin, age and religion related to a series of events from July 2007 through June 2008. Defendants argue that because plaintiff's informal complaint was limited to the issue of race and age discrimination related to his May 23, 2008 notice of termination, his remaining claims were not exhausted and must be dismissed. Under *Kraus* and *Boyd*, the Court finds this argument persuasive with respect to the defendants' disparate treatment and retaliation claims based events other than the May 23, 2008 notice raised in his informal EEO complaint. These other discriminatory acts – which took place between July 2007 and June 6, 2008, *see* AC ¶ 13 – were not raised in plaintiff's informal EEO complaint or apparently discussed with the EEO counselor. *See* Sladden Decl., Ex. A.

As noted above, the only action complained of in the informal EEO complaint was the May 23, 2008 notice of termination issued by Ford's then-supervisor Raymond Balingit. *Id*. All other claims regarding discrimination and retaliation, based on events other than the May 23, 2008 notice of termination, were not raised with the EEO counselor and have not been exhausted.

### ii. Hostile work environment cause of action

In his Fourth Cause of Action, plaintiff clearly includes the May 23, 2008 event as one of the events that is part of his hostile work environment claim, as well as the other events from July 2007 through June 2008. *See* AC, Fourth Cause of Action, ¶¶ 117-123. The Supreme Court has held that hostile work environment claims are not barred for lack of exhaustion or timeliness where at least one event – in a series of events all related to the alleged hostile work environment – is timely raised. *See, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S 101, 122 (2002) ("A charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Defendants argue that plaintiff cannot benefit from this rule because the informal EEO complaint did not explicitly raise a hostile work environment claim, but only "discrimination." However, the

applicable regulation requires employees to seek informal EEO counseling within 45 days of the "matter alleged to be discriminatory." *See* 29 C.F.R. § 1614.105(a). It does not require an employee to identify all potential legal claims associated with the discriminatory matter.

### iii. Denial of promotion cause of action

Plaintiff's Third Cause of Action is for denial of promotion. The Court initially notes that plaintiff has not alleged any facts in his AC that demonstrate that Ford either applied for or was positioned for a specific promotion that he was denied. More importantly, as noted above, the alleged denial of promotion events were likewise not included in Ford's June 30, 2008 information EEO complaint. As such, even if plaintiff could allege a denial of promotion based on facts not currently included in the AC, as plaintiff has failed to exhaust those claims they would likewise be barred for lack of exhaustion.[3]

### iv. Equitable tolling, waiver and estoppel

Plaintiff argues that principles of equitable tolling, waiver and estoppel apply to save the discrimination and retaliation claims not raised in or based on events raised in his informal EEO complaint. Plaintiff argues that equitable tolling and/or waiver should apply because he was not aware of the 45 day time frame for making informal EEO complaints. *See* Oppo. at 13. However, equitable tolling cannot apply where defendants establish that an employee received an EEO handbook clearly disclosing the time for filing an EEO informal complaint. *See, e.g., Johnson v. Henderson*, 314 F.3d 409, 415-416 (9th Cir. 2002) (relying in part on fact that an employee workbook that detailed EEO time frame to deny application of equitable tolling).

Here, there is proof that plaintiff received a guide describing the VA's EEO complaint

---

[3] Plaintiff argues that because facts regarding defendants' alleged disparate treatment of plaintiff included allegations that plaintiff was denied training offered to other, younger employees of races different than plaintiff and those claims were addressed in the administrative proceedings, plaintiff's claim for denial of promotion based on the same facts should be allowed to proceed here. However, plaintiff has failed to link the alleged training to any promotions offered or available to plaintiff or his co-workers. More fundamentally, the Court has found that those factual allegations were not timely raised in the informal EEO complaint and, therefore, have not been exhausted and cannot form the basis of discrete, actionable claims in this case.

7

procedures. Specifically, defendants point to the Declaration of Lynn Hart – which was submitted during the Equal Employment Opportunity Commission ("EEOC") investigation into plaintiff's allegations and submitted to this Court by plaintiff's counsel in support of his Opposition. That declaration (Docket No. 37-3 at pages 19-20), establishes that a training packet containing a guide for EEO procedures was typically handed out during new employee orientations, and that Ford attended an orientation on July 23-24, 2007. *Id*. The declaration also attached a copy of the "EEO Discrimination Policy" that is handed out during orientations, and pages 2-3 of that guide inform employees that the informal EEO process must be started within 45 days of the date(s) of the discriminatory or harassing incidents. Docket No. 37-3 at pages 22-23. Ms. Hart also declares that she personally attended an August 28, 2007 sexual harassment training where the EEO procedures guide was handed out again. *See* Docket No. 37-3 at page 20. Docket No. 37-3 at page 18 shows that Ford attended the August 28, 2007 sexual harassment training where the guide – which governs all EEO complaints, not just sexual harassment complaints – was handed out.[4]

In his opposition, plaintiff challenges the declaration because Ms. Hart was hired after the date of the new employee orientation that Ford attended and, therefore, does not have personal knowledge that Ford actually received a copy of the guide at his July orientation. Ford, however, does not dispute that Hart has personal knowledge that the guide was given out at the August 28, 2007 sexual harassment training – which both she and Ford attended. Ford argues that because the August 28, 2007 training dealt primarily with sexual harassment, he should not be charged with knowledge that the 45 day time frame also applied to other discrimination claims. Oppo. at 13-14. However, the guide handed out is not limited to sexual harassment claims but covers EEO procedures for all discrimination and whistleblower complaints. More importantly, plaintiff does not argue in his opposition that he did not receive the handbook either in July or August 2007.

Plaintiff also asserts that because the VA's ORM accepted plaintiff's formal complaint for investigation – which included all of the July 2007 through June 2008 events – and defended his claims

---

[4] As this Court's subject-matter jurisdiction over the unexhuasted claims is at issue, the Court can properly look at undisputed evidence submitted by the parties on the matter without turning the motion to dismiss into a motion for summary judgment. This is particularly true here where plaintiff is the one who submitted the documents to the Court in opposition to the motion to dismiss.

8

before the EEOC, they should be deemed to have waived the timeliness argument. *See* Oppo. at 16. However, in the Ninth Circuit, the acceptance of an untimely complaint for administrative investigation does not waive the right of a federal agency to subsequently object to the timeliness of the complaints. *Boyd* , 752 F.2d at 414.

Finally, plaintiff argues that he would be prejudiced by dismissal now because shortly after filing his formal EEO complaint "and not receiving any indication from the Agency that there was an issue with its timeliness," he hired a lawyer at great personal expense and proceeded to prosecute his case through the administrative process and then in this Court. Oppo. at 16. However, the timeliness issue was explicitly raised in the EEOC investigation and found to bar recovery for discrete claims based on events that occurred prior to the 45 day period preceding June 30, 2008. *See* Obayemi Decl., Ex. E at 1. Plaintiff cannot assert "surprise" about the VA's position on exhaustion in this Court.

Plaintiff's retaliation and discrimination claims based on events that were not raised in the June 30, 2008 informal EEO complaint, therefore, are barred as unexhausted.

In sum, the Court finds that plaintiff has exhausted his First Cause of Action for national origin/race discrimination, his Second Cause of Action for age discrimination and his Fifth Cause of Action for religion discrimination, but all three causes of action are limited to the May 23, 2008 notice of termination. Plaintiff has likewise exhausted his Fourth Cause of Action for Hostile Work Environment based on the alleged actions that took place between July 2007 and June 30, 2008. Plaintiff has not exhausted his Third Cause of Action for denial of promotion and that cause is DISMISSED in its entirety.

**B.  Failure to state a claim**

**i.  Retaliation claims**

In his First, Second, Fourth and Fifth Causes of Action plaintiff complains about retaliation based on race/national origin, age and religion related to a series of events from July 2007 through June 2008.

Plaintiff's AC is very unclear about what exact retaliation he suffered and what the "protected activity" was that led to retaliation. Instead, plaintiff generally terms the alleged discriminatory acts that occurred

9

to him between July 2007 and June 2008 as "retaliatory" but he appears to be alleging harassment. *See, e.g.*, AC ¶ 119 ("there were several False accusations leveled against Plaintiff, as a means of intimidating and coercing him and towards retaliating against him.").

In order to bring a claim for "retaliation" under Title VII, plaintiff has to make out a prima facie case by alleging: "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). Based on the Amended Complaint, there are no specific allegations that Ford engaged in any protected activity prior to the time that he made his informal EEO complaint on June 30, 2008. *See, e.g.*, AC ¶ 13 (listing the "retaliatory and discriminatory actions" taken against Ford, but including no acts after June 6, 2008); *see also* AC ¶ 119 (listing same events).

The only other place plaintiff attempts to allege protected activity is in paragraphs 45 through 53 of the Amended Complaint. There, plaintiff indicates that he was "retaliated upon" when he filed an unspecified "Report" on an unspecified date. AC ¶ 45. Plaintiff then complains that "prior to terminating the Plaintiff" the VA conducted a very "partial and interested" investigation into the allegations of harassment brought by Plaintiff. *Id.*, ¶¶ 46-50. However, generously construed, this allegation seems to refer to Ford's initial EEO complaint, and the retaliatory conduct complained of appears to be the subsequent EEO investigation – which did not result in his termination. *See* AC ¶ 13 (referring to an incorporating the March 2009 ORM Investigative Report).

Similarly, plaintiff fails to allege any adverse employment activity that followed his protected activity on June 30, 2008. Plaintiff does not dispute that the May 23, 2008 notice of termination was rescinded and that plaintiff was transferred into a permanent position. *See* Sladden, Ex. B at 12-13 (ORM Investigative Report, confirming notice of termination was rescinded and plaintiff was still employed with VA).[5] Plaintiff does not dispute that he still works at the VA. Moreover, this Court has found that a notice of termination that was subsequently rescinded without further consequence to plaintiff cannot form the basis of an "adverse employment action" required under Title VII. *See Vaughn*

---

[5] Plaintiff specifically incorporated the March 29, 2009 ORM Investigative Report into his Amended Complaint. *See e.g.*, AC ¶¶ 13-14, 17.

10

*v. Donahoe*, 2011 U.S. Dist. LEXIS 61038, *32 (N.D. Cal. June 7, 2011).

In his opposition, plaintiff argues that in the meeting where he was given the May 23, 2008 notice of termination, Ford expressed his intention to appeal the termination, and then Raymond Balingit (his supervisor) threatened Ford, saying if he appealed Ford would never get another job in federal service. *See* Oppo. at 18:24-27. Plaintiff argues that to punish him for announcing his intention to appeal, plaintiff's co-worker assigned him unwanted tasks on June 6, 2008. *Id*. at 18:26-27. Plaintiff, however, does not demonstrate that announcing an intent to appeal a notice of termination – pursuant to the rules of the Merit Systems Protection Board – is protected activity for purposes of Title VII. Unless plaintiff engaged in protected activity under Title VII, *e.g.,* complaining of discrimination, he cannot make out a prima facie claim for retaliation under Title VII. Plaintiff also argues that Balingit's statement itself was retaliatory. Oppo. at 19:17-19. However, not only has plaintiff still failed to allege protected activity prior to June 30, 2008, the supervisor's statement – that Ford would never be able to get another job in federal service – does not amount to an adverse employment action sufficient to state a claim for retaliation.

For the foregoing reasons, the Court finds that plaintiff has failed to allege a claim for retaliation as a matter of law. There are no allegations in the Amended Complaint or Opposition brief that would support a retaliation claim. Plaintiff has already been given a chance to amend his complaint once. The Court believes it would be futile to allow plaintiff a second chance to amend.[6] Therefore, plaintiff's retaliation claims are DISMISSED with prejudice.

### ii. May 23, 2008 Notice of Termination

As noted above, plaintiff's discrimination claims from his First, Second, and Fifth Causes of Action were exhausted only with respect to the May 23, 2008 notice of termination. Defendants argue that plaintiff has, as a matter of law, failed to state a claim for disparate treatment discrimination related to the May 23, 2008 notice of termination because no adverse employment action actually occurred.

---

[6] The Court also notes that there is no evidence that plaintiff's retaliation claims were ever raised in the administrative proceeding, so that even if plaintiff could properly allege facts to support a retaliation claim, it would likely be barred for failure to exhaust.

In order to establish a prima facie case of disparate treatment, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

As with the retaliation claim, the May 23, 2008 notice of termination – by itself – does not support an allegation of adverse employment action. The notice was rescinded. Plaintiff does not allege that he suffered any adverse *employment* consequences, as opposed to emotional consequences, from the rescinded notice. As such, plaintiff fails to state a discrete claim based on the May 23, 2008 notice of termination as with the retaliation claim, the Court has already provided plaintiff with one opportunity to amend and believes it would be futile to allow additional amendments.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike and dismiss are GRANTED in part and DENIED in part. Plaintiff's First, Second, Third and Fifth causes of action are DISMISSED without leave to amend. Plaintiff can proceed with only his Fourth Cause of Action for Hostile Work Environment.

**IT IS SO ORDERED.**

Dated: August 9, 2011

SUSAN ILLSTON
United States District Judge